**Luis L. ARMENTERO, Petitioner–Appellant,**

v.

**IMMIGRATION AND NATURAL-IZATION SERVICE, Respondent–Appellee.**

No. 02–55368.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 2003.

Submission Vacated Feb. 19, 2003.

Resubmitted Aug. 18, 2003.

Filed Aug. 26, 2003.

Michael Tanaka, Deputy Federal Public Defender, Los Angeles, CA, for the Petitioner–Appellant.

Greg D. Mack and Earle B. Wilson, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, for the Respondent–Appellee.

Marc Van Der Hout, Van Der Hout & Brigagliano, San Francisco, California, and Liliana M. Garces, American Civil Liberties Union Foundation Immigrants' Rights Project, Oakland, CA, for the Amici Curiae.

Before: MESKILL,* FERGUSON, and BERZON, Circuit Judges.

BERZON, Circuit Judge.

Luis Armentero, an excludable alien, contends that his potentially indefinite detention by the Immigration and Naturalization Service ("INS") is unlawful under *Zadvydas v. INS,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), as interpreted by this court's decision in *Xi v. INS,* 298 F.3d 832 (9th Cir.2002). The INS is named as sole respondent in Armentero's habeas petition. We do not reach the merits of the habeas petition because we conclude that the INS is not an appropriate respondent in these proceedings. We therefore remand to the district court with instructions that it allow Armentero to

* The Honorable Thomas J. Meskill, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

amend his petition by joining the appropriate respondent.

## BACKGROUND

As we decide only a procedural issue, we summarize the underlying circumstances briefly:

Luis Armentero, a native and citizen of Cuba, arrived at Key West, Florida as part of the Mariel Boatlift.[1] He was paroled into the United States pursuant to INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). During his first five years in the United States, Armentero amassed a record of arrests, convictions, and brief jail stints, mostly for petty offenses. Then, on June 24, 1985, Armentero was convicted of violating § 261.2 of the California Penal Code, Rape by Force, and sentenced to three years in prison. An Immigration Judge found Armentero excludable from the United States and ordered him deported. This order was not appealed and became final in November 1987.

The INS was apparently unable to deport Armentero. In the ensuing years, Armentero was released to a halfway house; detained once again by the INS after a new conviction; paroled again; convicted of yet another crime; and detained once more by the INS.

On October 5, 2001, while detained at the INS processing center in San Pedro, California, Armentero filed a pro se habeas petition in the United States District Court for the Central District of California,

claiming that he was being indefinitely detained in violation of the Due Process clause of the Fifth Amendment and that the conditions of his detention amounted to punishment imposed in violation of the Constitution. The INS later transferred Armentero from the San Pedro facility to the federal penitentiary at Terre Haute, Indiana, for continued detention.

The district court denied Armentero's petition without prejudice on January 25, 2002. Armentero then appealed to this court. Neither party raised the issue whether the INS was properly named as respondent to Armentero's habeas petition. We questioned the parties during oral argument regarding the propriety of naming the INS as respondent and ordered supplemental briefing on the issue. *See Malone v. Calderon,* 165 F.3d 1234, 1237 (9th Cir.1999) ("The court issuing the writ must have personal jurisdiction over the custodian. Without such jurisdiction, the court has no authority to direct the actions of the restraining authority." (internal citations omitted)); *Ortiz–Sandoval v. Gomez,* 81 F.3d 891, 894 (9th Cir.1996) ("Failure to name the correct respondent destroys personal jurisdiction.").

## ANALYSIS

Perhaps surprisingly, neither this court nor the Supreme Court has decided which official or entity is the appropriate respondent in a habeas petition filed by an INS detainee.[2] We therefore look to Supreme

---

1. The Mariel Boatlift occurred when, after civil unrest by Cubans seeking asylum at the Peruvian embassy in Havana, the Cuban government permitted 125,000 Cubans to depart by boat for the United States from the port city of Mariel. *See U.S. Department of State, Fact Sheet: U.S.-Cuba Relations,* (May 1, 2001) *at* http://www.state.gov/p/wha/rls/ fs/ 2001/2558.htm.

2. Although the factual circumstances presented here involve a detainee, non-detainees under INS control, such as those under an order

of deportation or removal, may also file habeas petitions. *See, e.g., INS v. St. Cyr,* 533 U.S. 289, 306–14, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (habeas is available to challenge the legality of the INS' deportation and removal orders). Because many of the practical problems facing immigration habeas petitioners in naming a respondent are common to detainees and non-detainees alike, we think our analysis of the respondent issue logically applies to most immigration habeas petitioners. The focus of this opinion, however, will be on

Court case law on habeas jurisdiction generally for principles to guide our determination, as well as to other circuit courts' views on this specific issue. In making our determination, we recognize that circumstances specific to the situation of immigration detainees pose unique practical dilemmas for which our holding must account. Further, our ultimate decision regarding the proper respondent is necessarily shaped by this particular moment in the history of our nation's immigration law, as the immigration detention duties formerly administered by the INS and overseen by the Attorney General have now been transferred in significant part to the Department of Homeland Security (DHS).

### A. Habeas Jurisdiction and the Custodian Requirement

#### 1) *The Habeas Statute*

The relevant statute, 28 U.S.C. § 2241, provides that a writ of habeas corpus shall only be granted if "a prisoner" is in custody under the authority of the United States "in violation of the Constitution or laws or treaties of the United States." Although the statute is commonly used by federal prisoners detained on criminal charges, it has also been employed, both historically and in its current form, by aliens detained for immigration law enforcement purposes. *See, e.g., INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Ahrens v. Clark,* 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), *abrogated on other grounds by Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *see also Zadvydas,* 533 U.S. at 687, 121 S.Ct. 2491(discussing historical and current use of the federal habeas corpus statute by immigration detainees).

Language specifying the form of an application for a writ of habeas corpus under 28 U.S.C. § 2242 provides that the application "shall allege ... the name of the person who has custody over him." The statute does not specify that the respondent named shall be the petitioner's immediate physical custodian, but habeas petitions brought by prisoners typically name the warden of the institution at which the prisoner is confined. *See Ortiz–Sandoval,* 81 F.3d at 894; *Brittingham v. United States,* 982 F.2d 378, 379 (9th Cir. 1992); *Guerra v. Meese,* 786 F.2d 414, 416 (D.C.Cir.1986). Both Supreme Court and Ninth Circuit case law, however, have recognized exceptions to the general practice of naming an immediate physical custodian as respondent, especially with regard to habeas petitions brought by persons detained for reasons other than federal criminal violations. As the statutory language is of little help in determining the precise "person who has custody over" a habeas petitioner, we look to case law for direction.

#### 2) *Supreme Court Case Law*

The Supreme Court has grappled only obliquely with the determination of which "person" has custody over an immigration detainee and therefore may properly be named as a respondent in a habeas action. On the question of most direct pertinence here, the Court has noted but avoided deciding whether the Attorney General is a proper respondent in an immigration habeas action. We review this interesting but ultimately indeterminate history briefly, for it does shed some indirect light on the issue before us.

In *Ex parte Endo,* 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243 (1944), the Supreme Court addressed the jurisdictional questions posed by a habeas petition brought in the District Court for the Northern District of California by Mitsuye Endo, a Jap-

the situation of those, like Armentero, who are currently in immigration detention.

anese–American woman who was initially interned in Tulelake, California, but was, during the pendency of her habeas case, transferred to an internment camp in Utah.[3] Because it was "of the view that the court may act if there is a respondent within reach of its process who has custody of the petitioner," *id.* at 306, 65 S.Ct. 208, and because there were potential respondents—the Secretary of the Interior or national-level officials of the War Relocation Authority—still within the District Court's territorial reach, *id.* at 304–05, 65 S.Ct. 208, the Court held that Endo's transfer did not destroy the California district court's jurisdiction. Thus, rather than formalistically examining who Endo's immediate physical custodian was, *Endo* stated that a habeas petition can be properly directed against national-level officials who have power to "produce[ ]" the petitioner. *Id.* at 305, 65 S.Ct. 208.

Four years later, in *Ahrens v. Clark*, the Supreme Court examined jurisdictional issues raised by habeas petitions brought by German immigrants detained on Ellis Island under removal orders issued by the Attorney General. The petitions named the Attorney General as sole respondent. The *Ahrens* Court determined that the detainees' habeas petitions had to be dismissed because the detainees had not filed the petitions in the district court for the district in which they were confined.[4] 335 U.S. at 193, 68 S.Ct. 1443. In so holding, *Ahrens* explicitly declined to consider whether the Attorney General, under whose removal orders and "custody and control" the aliens were detained, was the proper respondent to the immigrants' petitions. *Id.* at 189, 193, 68 S.Ct. 1443.

There ensued in the 1970s a trilogy of Supreme Court cases involving non-traditional habeas petitioners and respondents and concerning jurisdictional and venue questions. These cases focused largely on venue and territorial issues and so failed to enunciate any clear guidelines regarding the identity of proper respondents to such habeas petitions. These cases do offer, however, some general guidance for determining appropriate respondents in non-traditional habeas actions.

*Schlanger v. Seamans*, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971), addressed a habeas petition filed by a United States soldier temporarily studying at Arizona State University (ASU) but under the command and control of military officers stationed at Moody Air Force Base in Georgia. Schlanger filed a habeas petition in Arizona district court, alleging that his enlistment contract had been breached and that his freedom was being unlawfully restricted by the military. The petition named the Secretary of the Air Force, the Commander of Moody Air Force Base, and the Commander of ROTC on the ASU campus as respondents. *Id.* at 488, 91 S.Ct. 995.

The Court observed that Schlanger was not a participant in ASU's ROTC program and therefore did not fall within the ASU ROTC commander's chain of command. *Id.* at 488–89, 91 S.Ct. 995. Schlanger's custodian—the Commander of Moody Air Force Base, who supervised the soldier's Air Force activities—was located outside the territorial jurisdiction of the Arizona district court. *Id.* at 490–91, 91 S.Ct. 995. Accordingly, the Court found that the Ari-

---

**3.** *Endo* involved a challenge by an American citizen to the mass removal of all persons of Japanese ancestry "from the Pacific coastal regions" pursuant to Executive Order No. 9066, 7 Fed.Reg. 1407 (Feb. 19, 1942). 323 U.S. at 285, 65 S.Ct. 208.

**4.** This holding was later overruled by the Court's interpretation of amendments to the habeas statute in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973).

zona district court was without jurisdiction to adjudicate the petition. *Id.* at 491, 91 S.Ct. 995.

Oddly, the *Schlanger* Court did not discuss whether the Secretary of the Air Force might be both within the Arizona court's territorial jurisdiction and a proper respondent to Schlanger's petition. By this omission and its emphasis on the Moody Air Force Base commander as an essential party, *Schlanger* suggested that a habeas petition must name as respondent the individual who directly exercises the power to limit the petitioner's liberty—in the military context, the power to command. But insofar as *Schlanger* recognizes that a person who commands another from a substantial distance may be that person's custodian, it does not require that an individual actually exercise immediate, physical control to be a proper respondent in a habeas case.

Just one year after *Schlanger, Strait v. Laird,* 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972), held that Strait, a California-domiciled soldier under the command of an Indiana-based officer, could file a habeas action against that officer in California district court. The Court pointed to the fact that the Indiana officer had directed California-based military personnel in his dealings with Strait regarding Strait's application for conscientious objector discharge. *Id.* at 344, 92 S.Ct. 1693. Accordingly, the Indiana commander was

> 'present' in California through the officers in the hierarchy of the command who processed this serviceman's application for discharge. To require him to go to Indiana where he never has been or assigned to be would entail needless expense and inconvenience.... The concepts of 'custody' and 'custodian' are sufficiently broad to allow us to say that the commanding officer in Indiana, operating through officers in California in

processing petitioner's claim, is in California for the limited purposes of habeas corpus jurisdiction.

*Id.* at 345–46, 92 S.Ct. 1693.

*Strait* thus further developed the recognition in *Schlanger* that a distantly-placed individual who is not a habeas petitioner's immediate custodian can be a proper respondent. Under the *Strait* Court's "broad concept" of custodian, the operative concern is whether the respondent, whether by himself or through agents, directly caused restraint of the petitioner's liberty. Consideration of "needless expense and inconvenience" may also enter into the calculus.

*Strait,* however, offered no insight into how far removed in the chain of command a person can be and still be considered a custodian for habeas purposes. Although Strait had apparently named the Secretary of Defense as a respondent in addition to his Indiana commanding officer, the Court did not discuss whether the Secretary was a proper respondent in this case, just as it had not discussed in *Schlanger* whether the Air Force Secretary was properly named as a respondent.

Capping its trilogy of early 1970s cases on habeas jurisdiction, the Court in *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), declared that *Ahrens* was overruled and held that a petitioner imprisoned in Alabama could file a habeas petition in a Kentucky federal district court to challenge Kentucky's alleged failure to grant him a speedy trial on Kentucky state charges. The *Braden* Court reasoned that:

> The writ of habeas corpus does not act upon a prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.... Read literally, the language of [the habeas statute] requires nothing more

than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 494–95, 93 S.Ct. 1123. In emphasizing the location of the custodian, not that of the petitioner, *Braden* necessarily reaffirmed the earlier rulings that the custodian need not be the person with immediate physical control over the detained prisoner while imprisoned.

Read as a whole, the Supreme Court's pertinent case law indicates that the concept of custodian is a broad one that includes any person empowered to end restraint of a habeas petitioner's liberty, not just the petitioner's on-site, immediate physical custodian.

### 3) *Ninth Circuit Case Law*

The Ninth Circuit's habeas jurisprudence has often applied the rule that a petitioner's immediate physical custodian is the proper respondent in the context of traditional habeas petitions, but has recognized that the custodian requirement may be flexibly interpreted to encompass other custodians when it is efficient to do so.

*Brittingham v. United States,* 982 F.2d 378 (9th Cir.1992), a brief opinion issued after the trilogy of Supreme Court cases discussed above, did not examine those cases. Rejecting a petitioner's contention that the United States Marshal for the District of Hawaii was his custodian, *Brittingham* held that a habeas petitioner's immediate physical custodian is the proper respondent to a petition: "The proper respondent in a federal habeas corpus petition is the petitioner's 'immediate custodi-

an.' A custodian 'is the person having a day-to-day control over the prisoner. That person is the only one who can produce 'the body' of the petitioner.'" *Id.* at 379(internal citations omitted). As Brittingham was temporarily detained in a California state facility used for the detention of federal prisoners when he first filed his habeas petition, this court found that Brittingham's custodian was the warden of the California state facility, not the federal marshal responsible for transporting him to a federal prison where he might eventually be detained. *Id.* at 379–80.

Since *Brittingham,* however, this court has veered toward a more flexible approach. *Ortiz–Sandoval v. Gomez* held that a state prisoner could name the California Director of Corrections as a respondent to his habeas action instead of the warden of the prison where he was incarcerated. 81 F.3d at 896. Although the court observed that the warden is the "typical respondent," it recognized that the advisory committee notes to 28 U.S.C. § 2254 provided that the named respondent to the action could be the warden, the chief officer in charge of state penal institutions, or, in some cases, the Attorney General. *Id.* at 894. Thus, the advisory committee notes "contemplate[d] a variety of possible respondents, including multiple respondents." *Id. Ortiz–Sandoval* further noted that, although earlier courts had not discussed the propriety of naming the Director of the Department of Corrections, they had treated the director as respondent. *Id.*

*Ortiz–Sandoval* then engaged in a practical inquiry as to whether the Director of Corrections could serve the purposes of a habeas respondent:

Both the warden of a California prison and the Director of Corrections for California have the power to produce the prisoner. Both may receive service of

process. The director supervises the warden, but this does not mean that the warden is not a proper respondent. If it did, the governor would be the only proper respondent because he has supervisory power over the director. Conversely, the fact that a warden has more direct control over the prisoner than the director does not exclude the director as a possible respondent.

*Id.* at 895. *Ortiz–Sandoval* noted in particular that naming the Director rather than the warden could serve "the efficient administration of justice" by avoiding procedural problems that might arise from situations, such as a prisoner's transfer, in which naming an immediate custodian could lead to a loss of personal jurisdiction if the immediate custodian changed. *Id.* at 896. Thus, *Ortiz–Sandoval* took into account the need for efficient resolution of habeas claims and approved of a flexible, practical approach to designating appropriate respondents.

It is difficult to reconcile *Brittingham's* firm pronouncements with the Supreme Court's and *Ortiz–Sandoval's* more flexible approach. We think that tension between *Brittingham* and *Ortiz–Sandoval* is best resolved by recognizing that *Brittingham* deals with an unusual, highly fact-specific situation: The federal marshal in *Brittingham* was only responsible for transporting the petitioner and obviously had no power to command or direct the petitioner's release. *Brittingham* did not address the question whether a *higher* official or entity in the hierarchy than the immediate custodian would be a proper habeas custodian, and therefore did not address the pertinent Supreme Court cases so indicating. Accordingly, *Ortiz–Sandoval*, with its flexible view of who can be a proper respondent, is the Ninth Circuit case most applicable to the present case. Neither of these cases, however, addresses the habeas respondent question in the particular circumstances faced by immigration detainees, and thus neither case necessarily dictates our decision here.

### 4) *Out–of–Circuit Cases Addressing Immigration Detainees*

Although the Supreme Court and the Ninth Circuit have not definitively determined the proper respondent to a habeas petition brought by an immigration detainee, two other circuits have, and one other has discussed the issue at some length without resolving it.

Two Courts of Appeals have determined that a detainee's immediate custodian is the appropriate respondent in an immigration habeas case. In *Vasquez v. Reno*, 233 F.3d 688 (1st Cir.2000), *cert. denied*, 534 U.S. 816, 122 S.Ct. 43, 151 L.Ed.2d 15 (2001), the First Circuit held that the Attorney General was not an appropriate respondent in a habeas action brought by an alien detained in an INS detention facility in Oakdale, Louisiana. Viewing Supreme Court precedent on the proper custodian issue as "inscrutable," the court noted that circuit courts, in the context of traditional habeas petitions, have held "with echolalic regularity, that a prisoner's proper custodian for purposes of habeas review is the warden of the facility where he is being held.... The warden is the proper custodian because he has day-to-day control over the petitioner and is able to produce the latter before the habeas court." *Id.* at 691.

In so holding, the *Vasquez* court pointed to non-immigration cases in other circuits rejecting the designation of the Attorney General as respondent on the grounds that the prison warden has day-to-day control over the petitioner and the actual ability to produce the "corpus." *Id.* The court stated that it found "no principled distinction between an alien held in a detention facility awaiting possible deportation and a prisoner held in a correctional facility

awaiting trial or serving a sentence." *Id.* at 693. Moreover, the rule that the proper respondent in habeas actions is the immediate custodian "is clear and easily administered." *Id.*

The *Vasquez* court examined three arguments in favor of considering the Attorney General custodian of aliens for immigration habeas purposes: (1) the court-crippling concentration of habeas cases in the Western District of Louisiana, where the Oakdale INS detention center (and its director) are located; (2) the value of a "practical approach" to the identity of the custodian, as expressed in habeas case law; and (3) the unique role of the Attorney General in immigration matters. *Id.*

Although the court acknowledged that the district courts in the Western District of Louisiana were overwhelmed with alien habeas petitions, the court determined that Congress, not the courts, must rewrite the definition of "custodian" to ease the Louisiana courts' burden. *Id.* at 694. The court further expressed the concern that allowing petitioners to name the Attorney General as respondent using this logic would foster "rampant forum shopping" and generate litigation concerning questions of venue and forum non conveniens. *Id.*

Addressing the argument that "custodian" was a flexible concept under the relevant law, *Vasquez* examined the Supreme Court's *Endo* and *Strait* decisions. Because *Endo* presented a situation in which the petitioner had filed her petition in the district court for the area in which she was being held before her transfer, the court found that it differed significantly from the situation of Vasquez, who, while he was detained at Oakdale, had filed his habeas petition in the Massachusetts district court, "where neither he nor his immediate custodian was physically present." *Id.* at 695. The court distinguished *Strait* on the basis that all Strait's face-to-face contacts with the military had taken place in Cali-

fornia; he had never been to Indiana, where his commanding officer was stationed. In contrast, Vasquez, although he had resided, was apprehended, and was initially detained by the INS in Massachusetts, had been transferred to Oakdale and had his removal proceedings conducted in that location. *Id.*

The court concluded that *Endo* and *Strait*:

> simply do[ ] not give a legitimate judicial imprimatur to a freewheeling definition of "custodian" such as the petitioner champions. At most, these decisions represent idiosyncratic responses to highly unusual facts. They cannot plausibly be read, singly or in combination, to consign to the scrap heap the substantial body of well-reasoned authority holding that a detainee must name his immediate custodian as the respondent to a habeas petition.

*Id.* at 695–96.

The court then rejected the argument that the Attorney General's unique position as the ultimate decisionmaker on immigration matters and considerable discretion over detention and removal of aliens made her a proper respondent in alien habeas cases: "[T]he Attorney General's role with regard to aliens is not materially different from her role with regard to prisoners, at least not different enough to justify a rule that she is the custodian of aliens, but not prisoners, for habeas purposes." *Id.* at 696. *Vasquez* therefore concluded that, absent exceptional circumstances, an alien contesting the legality of his INS detention "normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained." *Id.*

Two other circuit courts have addressed the identity of the proper respondent to an immigration detainee's petition. In *Yi v.*

*Maugans,* 24 F.3d 500 (3d Cir.1994), the Third Circuit examined whether the district director of the INS, rather than the warden of the INS facility where Li was detained, could be a respondent in an immigration habeas petition. *Yi* rejected this idea, holding that "the warden of the prison or the facility where the detainee is held ... is considered the custodian for purposes of a habeas action." *Id.* at 507. *Yi* offered little support for this conclusion, merely stating:

[I]t is the warden that has day-to-day control over the prisoner and who can produce the actual body. That the district director has the power to release the detainees does not alter our conclusion. Otherwise, the Attorney General of the United States could be considered the custodian of every alien and prisoner in custody because ultimately she controls the district directors and the prisons.

*Id.* (internal citations omitted).

The Second Circuit discussed the issue more fully in *Henderson v. INS,* 157 F.3d 106 (2d Cir.1998), *cert. denied sub nom. Reno v. Navas,* 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999), in which it discussed, without deciding the issue, the pros and cons of permitting the Attorney General to be named as a respondent in immigration habeas cases. *Henderson* involved several criminal alien habeas petitions, most of which had named several respondents. The court observed that the question of the proper custodian's identity has historically depended both on "who has power over the petitioner and ... the convenience of the parties and the court," *id.* at 122, and that the concept of custodian "has broadened ... because of increasing practical problems that allegedly attach to the traditional approach," *id.* at 124. Citing *Endo* and *Strait* as examples of the Supreme Court's "flexible approach" to respondents in habeas actions, *Henderson* pointed to specific reasons why the Attorney General might properly be named as respondent in some or all immigration habeas actions. Those reasons include Congress' statutory designation of the Attorney General as legal custodian of criminal aliens and the Attorney General's broad statutory power to detain aliens. *Id.* at 126. The court added:

There is also no question that the Attorney General has the power to produce the petitioners, remains the ultimate decisionmaker as to matters concerning the INS, and is commonly designated as a respondent in these cases, even when personal jurisdiction over the immediate custodian clearly lies. In this respect, the extraordinary and pervasive role that the Attorney General plays in immigration matters is virtually unique.

*Id.* (internal citations omitted).

Henderson, however, also recounted arguments against allowing the Attorney General to be named a respondent in habeas cases. As in *Vasquez,* the court noted the parallels between the Attorney General's statutory custodianship over prisoners and aliens, "yet no one seriously suggests that she is a proper respondent in prisoner habeas cases." *Id.* The court also recognized concerns about forum-shopping but ultimately concluded that the application of traditional venue doctrine, rather than "'an inflexible *jurisdictional* rule'" could do much to curb this potential problem. *Id.* at 127–28 (quoting *Braden,* 410 U.S. at 500, 93 S.Ct. 1123) (emphasis in original). Finally, the court observed that although allowing the Attorney General to be named as respondent could ease the Oakdale-generated crisis in the Western District of Louisiana, "it might only accomplish this by overcrowding those relatively few districts in which aliens disproportionately reside, districts that are already among the busiest in the nation." *Id.* at 128.

Despite its extensive discussion, the *Henderson* court ultimately determined that it was unnecessary to reach whether the Attorney General was a proper respondent under the circumstances of the cases before it and declined to decide the issue.

## B. The Flexible Concept of Custodian in Immigration Habeas Cases

As the discussion heretofore illustrates, neither Supreme Court case law nor our own precedent states a clear path toward identifying the proper respondent or respondents in an immigration detainee's habeas petition. What we do glean from these cases and others is that, while a petitioner's immediate physical custodian is typically a proper respondent in traditional habeas petitions, the statutory custodian requirement of 28 U.S.C. § 2241 is sufficiently flexible to permit the naming of respondents who are not immediate physical custodians if practicality, efficiency, and the interests of justice so demand. *See Ortiz–Sandoval*, 81 F.3d at 896("Prompt resolution of prisoners' claims is a principal function of habeas."); *Dunn v. U.S. Parole Comm'n*, 818 F.2d 742, 744 (10th Cir.1987) (as long as the petitioner names as respondent a person or entity with power to release him, a court should not avoid reaching the merits of his petition); *Lee v. United States*, 501 F.2d 494, 503 n. 9 (8th Cir.1974) (Webster, J., concurring) ("[W]e have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements.")

The circumstances surrounding the immigration-related detention of aliens demand such flexibility. Although held at the behest of federal authorities, immigration detainees are physically detained in a host of institutions, ranging from specialized immigration detention centers to federal prisons to state and local prisons and jails. *See* Michael Welch, *Detained: Immigration Laws and the Expanding INS Jail Complex* 108 (2002) (due to limited capacity in INS detention centers, more than 10,000 immigration detainees are housed in 900 state prisons and local jails); Julie Sullivan, "Illegal Immigrants Are Dumped into a Secret Network of Prisons," *The Oregonian*, Dec. 10, 2000, at A1 (the INS "[f]arms out more than half the 20,050 people it jails daily to a haphazard network of 1,940 private state prisons and county jails"); Human Rights Watch, "Introduction," *in Locked Away: Immigration Detainees in Jails in the United States* (Sept.1998) [hereinafter *Locked Away* ] (almost 60% of INS detainees are held in local jails).

When immigration detainees are held in state and local institutions—as they frequently are—a writ directed to the warden of the institution would make little legal sense, as the wardens' control over immigration detainees in their institutions results from their limited contractual arrangements with federal authorities. Although local and state authorities may contract with federal agencies to house, maintain, and guard detainees, they do not have any power to release detainees except if explicitly commanded to do so by federal authorities. It is therefore not logical to demand that an immigration detainee's petition be directed to a local or state warden who in reality has no legal power and, often, little actual power to "bring forth the body" of the detainee. *See Roman v. Ashcroft*, 162 F.Supp.2d 755, 760–61 (N.D.Ohio 2001) (noting warden's minimal to nonexistent role in producing the petitioner's body for the purpose of modern habeas proceedings); Rachel E. Rosenbloom, *Is the Attorney General the Custodian of an INS Detainee?*, 27 N.Y.U. Rev. L. & Soc. Change 543, 575 (2002) (noting that the Supreme Court focused in *Braden* on the

respondent's ability to free the petitioner from legal, not physical, restraint).

Nor is it practical or in the interests of justice to apply rigidly the immediate physical custodian rule to immigration detainees' habeas petitions. Immigration detainees are frequently transferred among federal, state, and local institutions across the country. *See Locked Away, supra,* at 33–35(discussing frequent transfers of INS detainees).[5] By the time a district court judge is able to consider a habeas petition filed in her court, the petitioner may already have been moved out of the court's territorial jurisdiction, thereby necessitating time-consuming transfer or dismissal of the petition if the immediate custodian rule is strictly applied. *See, e.g., Rumierz v. INS,* 2000 WL 1920003 (D.R.I.Dec. 27, 2000) (district court determined that it lacked personal jurisdiction of habeas petition filed by immigration detainee transferred to five different institutions over the course of five years when petitioner was transferred to a detention center in New Jersey); Rosenbloom, *supra,* at 549. If detainees were permitted only to file their habeas petitions against their immediate physical custodian, and hence, under personal jurisdiction rules could only file in the district in which they were detained (so that their custodian would be within reach of the court's process,) expedient resolution of their habeas claims would be greatly hampered.

When transferred, immigration detainees are often relocated to an area of the country far from the contacts and resources they enjoyed while living in the United States. Detention centers are frequently located in rural areas, far from the location of evidence relevant to the detainee's petition. *See Locked Away, supra,* at

22. The isolated and/or distant location of detainees may severely cripple their ability to obtain and be represented by counsel. For example, if the California attorney of an alien formerly domiciled in California but now detained in rural Oakdale, Louisiana, is only permitted to litigate her client's petition in the District Court for the Western District of Louisiana, the cost of travel and other expenses could prove fatal to the feasibility of the representation. *See Rosenbloom, supra,* at 549–50(discussing logistical barriers to representation of aliens detained in remote areas); Sullivan, *supra* (describing case in which legal aid organization could not afford to represent alien after he was transferred to a detention center in Alabama); *Locked Away, supra,* at 22–24(describing hindrances to legal representation of aliens).

Moreover, out-of-state attorneys may be constrained by an individual state's or court's *pro hac vice* rules limiting the ability of out-of-state attorneys to practice. *See Rosenbloom, supra,* at 550. Although a more flexible custodian rule in immigration cases might not completely resolve these difficulties, it would better account for the reality of the frequently-changing and often far-flung locations in which aliens are detained.

Finally, there are indications that the district courts in areas where immigration detention centers are located have been flooded with detainee habeas petitions. This influx may seriously threaten some district courts' ability to consider petitions in a reasonably prompt manner. *See, e.g., Emejulu v. INS,* 989 F.2d 771, 772 (5th Cir.1993) (per curiam) (noting that "administrative delays in processing deportations"

---

**5.** Armentero's case illustrates the logistical problems caused by frequent detainee transfer. Since filing his habeas petition in the Central District of California, he has been transferred between an INS facility in California, a local jail in California, and federal prisons in Indiana and Oregon.

at the Oakdale INS facility "produce an atypical and unanticipated volume of habeas petitions that is beyond the capability of the district court [for the Western District of Louisiana] to process in a timely fashion"). Although refusing adherence to a strict immediate physical custodian rule might still result in larger concentrations of habeas petitions filed in parts of the country where more aliens reside, such flexibility would go a long way towards reducing unmanageable burdens in the very few district courts in which INS facilities are located and the consequent delay facing parties to habeas proceedings before them.

A more flexible approach toward naming a respondent need not open the door to forum shopping by petitioners. District courts may use traditional venue considerations to control where detainees bring habeas petitions. *See Braden,* 410 U.S. at 493–94, 93 S.Ct. 1123("traditional venue considerations" in determining the proper venue for a habeas action include: where the material events took place; where records and witnesses pertinent to the petitioner's claim are likely to be found; the convenience of the parties); *Henderson,* 157 F.3d at 128("[T]here is reason to think that strict application of 'traditional principles of venue' in alien habeas cases might adequately control the forum shopping in which aliens might try to engage were the Attorney General to be designated an appropriate respondent.").

Nor would such an approach gut the immediate custodian rule as applied to traditional habeas petitions brought by federal criminal prisoners. Unlike the First and Third Circuits, we see significant differences between the situation of federal

criminal prisoners and that of immigration detainees. The government's heavy reliance on local jails, rather than federal institutions, to house immigration detainees necessarily results in a different concept of "custodian," one based more on the legal reality of control than the technicalities of who administers on a day-to-day basis the facility in which an individual is detained.

Also, although the logistical problems posed by the transferring of detainees and isolated rural detention locations are not unique to immigration habeas cases, the frequency of transfers and the particularly scattershot distribution of aliens in local jails across the nation[6] exacerbate obstacles to bringing habeas petitions. In particular, the muddled custodial circumstances created by the detention of persons via contract arrangements between federal immigration authorities and state and local facilities poses a particular problem for an immigration detainee's identification of a custodian who has the power to direct his or her release.

Finally, we observe that, under *Ortiz–Sandoval,* we have already disagreed with the First Circuit's conclusion that the immediate custodian rule must be applied even when it fails to facilitate "the efficient administration of justice." 81 F.3d at 896. Because logical, equitable, and efficiency considerations militate against applying the immediate custodian approach to designating a respondent, we proceed to determine who is appropriately designated as respondent in habeas petitions brought by immigration detainees.

---

**6.** "INS detainees are frequently transferred from facility to facility and state to state. Decisions about when and where detainees are transferred are made at the district level and informed by such things as court appear-

ances, immigration case status and availability and cost of bed space, but the INS rarely considers the location of families, friends, or legal counsel." *Locked Away, supra,* at 33–34.

## C. The Proper Respondent

For the reasons discussed, strict adherence to the rule that the appropriate respondent in an alien's habeas petitions is the alien's immediate physical custodian does not make sense in the immigration context. After surveying the other possibilities, we conclude that the most appropriate respondent to petitions brought by immigration detainees is the individual in charge of the national government agency under whose auspices the alien is detained.

In supplemental briefing, both Armentero and the INS have advanced their suggestions for a proper respondent in habeas cases brought by immigration detainees. Notably, *neither* party proposes that the warden of the facility in which Armentero is detained is the appropriate respondent. Armentero proposes that we deem the INS, or its successor administrative body, a proper respondent. Because the statutory language specifies that a writ of habeas corpus state "the name of the *person*" who has custody over the petitioner, 28 U.S.C. § 2242 (emphasis added), we think it more appropriate that a natural person, rather than an agency, be named as respondent where, as here, it is possible and logical to do so.[7] *Compare Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (Parole Board was properly named as respondent in parolee's habeas petition where statutes and parole order placed the petitioner under direct custody and control of the Parole Board rather than an individual officer).

We also reject, however, the INS' proposal that the appropriate respondent to such habeas actions is the Bureau of Immigration and Customs Enforcement Interim District Director for the region in which a petitioner is detained. Designating the Interim District Director as the proper respondent would entail some of the same the pitfalls presented by strict adherence to the immediate physical custodian rule. It would illogically tether the detainee's petition to a local figurehead, complicating adjudication of the petition when a detainee is transferred to a facility in another region.

Instead of adopting one of these possibilities proffered by the parties, we conclude that the Attorney General was—at the time Armentero's petition was filed, that is, prior to November 2002—the appropriate respondent to an immigration detainee's habeas petition. Under the old system, the Attorney General oversaw the activities of the INS and exercised a unique decisionmaking authority over immigration matters, including detention and parole of aliens. *See* 8 U.S.C. § 1103(a)(1) (2001) ("The Attorney General shall be charged with administration and enforcement of laws under[the INA]."); 8 U.S.C. § 1182(d)(5)(A) (2001) (Attorney General's power to parole aliens and to return them to custody when he determines that the purposes of parole are served); 8 U.S.C. § 1231(a)(6) (2001) (Attorney General's power to detain inadmissable or criminal aliens); *Henderson*, 157 F.3d at 126. The

---

7. We recognize that the Supreme Court and this court have reviewed the merits of numerous habeas petitions brought against the INS without questioning the propriety of naming the INS as respondent. Upon full consideration of the issue and taking account of the changes in the nation's immigration law enforcement bureaucracy wrought by the Homeland Security Act, we take the opportunity to fashion what we hope will be a clear, logical rule for future petitioners to follow.

We do not question that under certain circumstances it may be appropriate to name an organization or an agency, rather than an individual, as respondent. *See, e.g., Jones*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285. We hold, however, that it is appropriate in this case and future cases like it for petitioners to name specific individuals as respondents rather than a now-defunct agency or any of the new entities performing former INS functions.

efficiency considerations described above also support this conclusion.

Because Armentero did not designate the proper custodian when his petition was filed, however, we must now remand in order to allow him to name a proper respondent. Thus, the intervening passage of the Homeland Security Act, Pub.L. No. 107–296, 116 Stat. 2135 (Nov. 25, 2002), necessarily informs our designation of the proper respondent for the purposes of Armentero's future proceedings, as well as for habeas petitions filed after November 2002.

 The Homeland Security Act abolishes the INS and transfers its enforcement responsibilities to the Directorate of Border and Transportation Security (BTS), a division of the newly-created Department of Homeland Security (DHS), thereby dramatically reconfiguring the administrative structure for enforcing the nation's immigration laws. *See* Pub.L. No. 107–296, §§ 402, 441, 471, 116 Stat. 2135, 2177–78, 2192, 2205; 6 U.S.C. §§ 202, 251, 291. The DHS Secretary, acting through the Under Secretary for the Directorate of BTS, is now charged with "[c]arrying out the immigration enforcement functions vested by statute in, or performed by, the Commissioner of Immigration and Naturalization (or any officer, employee, or component of the Immigration and Naturalization Service)." Pub.L. No. 107–296, § 402(3), 116 Stat. 2135, 2178; 6 U.S.C. § 202(3). These duties include administering the INS' detention and removal program. Pub.L. No. 107–296, § 441(2), 116 Stat. 2135, 2192; 6 U.S.C. § 251(2).

Because the Homeland Security Act transfers most immigration law enforcement responsibilities from the INS, a subdivision of the Department of Justice, to the BTS, a subdivision of the Department of Homeland Security, the extent of the Attorney General's power to direct the detention of aliens is unclear. Notably,

statutory language relied on by the Second Circuit in *Henderson* for the proposition that the Attorney General plays a uniquely pervasive role in detaining aliens remains intact, as do other provisions granting the Attorney General power to detain aliens. *See, e.g.,* 8 U.S.C. § 1182(d)(5)(A) (Attorney General may parole an individual alien or return him "to the custody from which he was paroled"); 8 U.S.C. § 1226(c) (Attorney General is required to detain and has the power to release certain criminal aliens); 8 U.S.C. § 1231(a)(6) (Attorney General may determine whether to detain removable and inadmissable aliens); 8 U.S.C. § 1252(b)(3)(A) (designating Attorney General as respondent in petitions for review brought by aliens).

More recent language added to the INA by the Homeland Security Act suggests that the Attorney General may share with the DHS Secretary some responsibility for overseeing the detention of aliens. The amended INA charges the DHS Secretary with

> the administration and enforcement [of the INA] and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, the Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic and consular offices: *Provided, however,* That determination and ruling by the Attorney General with respect to all questions of law shall be controlling.

8 U.S.C. § 1103(a)(1) (emphasis in original). Amended portions of the INA also authorize the Attorney General to make payments for services and supplies necessary to maintain detained aliens, to contract with state and local entities for detention arrangements, to exercise authority as was exercised by the Execu-

tive Office for Immigration Review, and to "establish such regulations, prescribe such forms of bond, reports, entries, and other papers, issue such instructions, review such administrative determinations in immigration proceedings, delegate such authority and perform such other acts as the Attorney General determines to be necessary for carrying out this section." 8 U.S.C. § 1103(a)(11), (g).

Moreover, the Attorney General has recently asserted a broad power to make "controlling" legal and policy determinations regarding whether individual aliens should be detained. *See In re D–J*, 23 I. & N. Dec. 572, 573–74, 2003 WL 1953603 (Op. Att'y Gen. April 17, 2003) ("Although authority to enforce and administer the INA and other laws related to the immigration and naturalization of aliens has recently been transferred to the Secretary of Homeland Security by the HSA, the Attorney General retains his authority to make controlling determinations with respect to questions of law arising under those statutes."); *see also id.* (citing "considerations of sound immigration policy and national security" in denying bond to a detained alien). As it is not the question

before us, we do not here decide whether the Attorney General has the powers he asserts. Until the exact parameters of the Attorney General's power to detain aliens under the new Homeland Security scheme are decisively delineated, we believe it makes sense for immigration habeas petitioners to name the Attorney General *in addition* to naming the DHS Secretary as respondents in their habeas petitions.

Having determined that, generally, the appropriate respondents in an immigration detainee's habeas petition are the Secretary of the Department of Homeland Security [8] and, at least for the time being, the Attorney General, we turn to the specific circumstances of this case. Armentero has named the INS as sole respondent in his habeas petition. Although he might properly have named the Attorney General as sole respondent when he first filed his petition in 2001, the DHS Secretary now bears statutory responsibility for his detention. There also remains the possibility that the Attorney General continues to exercise control over his detention. It makes no sense to direct Armentero on remand to name only the Attorney General, who according to the Homeland Securi-

---

8. As we have noted, the DHS Secretary conducts his immigration detention activities through the BTS Under Secretary. The BTS Under Secretary's enforcement responsibilities are further subdivided by the delegation of detention responsibilities to the Bureau of Immigration and Customs Enforcement (BICE). *See Welcome to the Bureau of Immigration and Customs Enforcement at* http://www.bice.immigration.gov; Press Release, U.S. Department of Homeland Security, *Border Reorganization Fact Sheet* (Jan. 30, 2003), *available at* http://www.dhs.gov/dhspublic/interapp/press—release/press— release—0073.xml. Conceivably, the individuals in charge of these subdivisions could be appropriate respondents to habeas actions brought by immigration detainees.

We are mindful, however, that the immigration law enforcement hierarchy within DHS

is still evolving. *See, e.g., Border Reorganization Fact Sheet, supra* (explaining that the Bureau of Border Security described in the Homeland Security Act of 2002 was renamed the Bureau of Immigration and Customs Enforcement in 2003). Rather than waiting for the internal DHS structure to solidify or attempting to identify the precise commissioner, under secretary or bureau head within the Department most directly linked to immigration detention matters, we believe it is important to announce now a simple, clear rule whereby immigration detainees will know whom they must name as respondents in their habeas petitions. For the sake of clarity, we determine that the DHS Secretary is to be the appropriate respondent for those detained under the authority of DHS and its sub-departments.

**1074**

ty Act no longer exercises primary custodial control over immigration detainees. We therefore remand to the district court with instructions that it permit Armentero to amend his petition to name the DHS Secretary *and* the Attorney General as respondents. *See, e.g., Stanley v. California Supreme Court,* 21 F.3d 359, 360 (9th Cir. 1994) (where petitioner improperly named court as respondent, remanding petition to the district court with instructions to dismiss the petition for lack of jurisdiction unless petition was timely amended is appropriate). The DHS Secretary and the Attorney General "may be described as a party by [their] official title[s] rather than by name; but the court may require the officer[s'] name[s] to be added." Fed. R. Civ. Pro. 25(d)(2). If Armentero does not timely amend his petition, it must be dismissed for lack of jurisdiction. *See Stanley,* 21 F.3d at 360.

## CONCLUSION

Neither Supreme Court law nor our own precedent requires that an immigration detainee name her immediate physical custodian as respondent in a habeas action. Accounting for the considerable practical problems with adhering to an immediate custodian rule in the immigration context and the changes resulting from the recent overhaul of the agencies enforcing our nation's immigration laws, we hold that the appropriate respondents to immigration detainees' petitions are the DHS Secretary and the Attorney General. We therefore remand to the district court with instructions that it grant Armentero a reasonable period of time in which to amend his petition to add the proper respondents.

REMANDED.