Hemachal SOMIR, Petitioner,

v.

UNITED STATES, Respondent.

No. 04–CV–2974.

United States District Court,
E.D. New York.

Jan. 25, 2005.

Hemachal Somir, Freehold, NJ, pro se.

Marguerite Clymene Mills, Scott Dunn, Dione M. Enea, United States Attorneys Office, Brooklyn, NY, for Respondent.

*MEMORANDUM & ORDER*

GARAUFIS, District Judge.

*Pro se* petitioner Hemachal Somir ("Somir") is a native of Guyana who has sought relief from this court against the actions of the Bureau of Immigration and Customs Enforcement ("BICE") in two separate petitions. The first petition, filed with this court on July 9, 2004 ("July 9 Petition"), asks this court to suspend enforcement of a 1998 exclusion order ("1998 Order"), pursuant to which Somir initially was detained by immigration officials. However, the United States has indicated that it no longer intends to enforce that exclusion order, and will instead institute removal proceedings against Somir based on his illegal re-entry in 1999. This initiation of removal proceedings is the subject of Somir's December 5, 2004 letter ("December 5 Petition"), in which he argues that *res judicata* bars the United States from instituting

removal proceedings against him. Because the only possible basis for federal court jurisdiction under these circumstances is habeas review, this court has interpreted Somir's letters as successive petitions for relief from detention and the prospect of removal pursuant to 28 U.S.C. § 2241. For the reasons discussed below, no writ of habeas corpus shall issue at this time, although, contrary to the Government's contention, this court may exercise jurisdiction over the proper respondent in this case, the Attorney General of the United States. Somir's July 9 Petition is dismissed because Somir failed to exhaust his administrative remedies before the immigration authorities. Somir's December 5 Petition also must be dismissed because his application for relief against the newly instated deportation proceedings is premature; federal law does not permit this court to adjudicate a claim that the immigration authorities should be barred from initiating deportation proceedings.

## I. Background

Petitioner Hemachal Somir first came to the attention of the immigration authorities when he was detained on December 18, 1996 while attempting to enter the United States at Niagara Falls, New York using a United States passport that belonged to another individual. Declaration of Dione M. Enea ("Enea Decl." ¶ 3; Exh. 1). The former Immigration and Naturalization Service ("INS") initiated exclusion proceedings against Somir that same day, charging that Somir was inadmissible under 8 U.S.C. §§ 1182(a)(6)(C)(i) and (a)(7)(A)(i)(I) because he had attempted to enter the United States by fraud or willful misrepresentation, and because he was an immigrant who attempted to enter the country without a valid entry document. (Enea Decl. ¶ 4, Exh. 3). Over the objection of the INS, the immigration judge who presided over the exclusion hearing on January 2, 1997 allowed Somir to with-

draw his application for admission to the United States, (Enea Decl. ¶ 5, Exh. 4), and terminated the exclusion proceedings. (Enea Decl. ¶ 5, Exh. 5). The INS successfully appealed the decision allowing Somir to withdraw his application (Enea Decl. ¶ 5, Exh. 7), and on remand, the immigration judge ordered Somir excluded and deported on May 29, 1998. (Enea Decl. ¶ 6, Exh. 8). Upon withdrawing his application for admission, Somir appears to have left the United States immediately and applied for refugee status upon arrival in Canada on January 2, 1997 (Canadian Immigration Document IMM 1442, attached to Pet. Reply Br. of Nov. 7, 2004). According to his own statements to immigration officials, Somir returned to the United States without inspection in March 1999. (Enea Decl, Exh. 1). Somir was subsequently taken into custody on September 25, 2004 pursuant to the efforts of officials of the Department of Homeland Security to enforce the 1998 exclusion order still pending against Somir. (Somir Letter to the Court, dated Sept. 28, 2004). However, because the immigration judge lacked jurisdiction to enter an exclusion order as to Somir if, as it appears, Somir was not in the United States when the 1998 Order was issued, the United States is no longer attempting to enforce the exclusion order, and instead plans to seek removal based on its contention that Somir illegally entered the United States in 1999. (Enea Letter, November 18, 2004).

## II. Habeas Jurisdiction

In his various submissions, Somir alternately has named outgoing Attorney General John Ashcroft, BICE and the United States as respondents in this action. In so captioning his submissions and filing them in this District, Somir necessarily argues that at least one of these officials or entities is a proper respondent, and that the habeas jurisdiction of this court extends to

that official or entity. The government disagrees. Relying upon the recent Supreme Court decision, *Rumsfeld v. Padilla,* —— U.S. ——, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004), the government asserts that this court does not have territorial jurisdiction over the instant petition because Somir's immediate custodian—and thus the proper respondent in any habeas petition filed by Somir—is the New York Field Office Director of BICE. Because that official conducts his business within the Southern District of New York, the government asserts that this court cannot exercise territorial jurisdiction over the proper respondent, and that Somir's petition therefore should be transferred to the Southern District for adjudication.

■ I indicated in *Campbell v. Gantner,* No. 04 Civ. 2974, 2004 WL 3105935, *3 n. 2

(E.D.N.Y. Dec. 7, 2004) that I found the government's argument on this point to be unpersuasive, in no small part because *Padilla* itself expressly withheld judgment on whether the bright-line "immediate custodian" rule articulated in that decision for habeas challenges to present physical confinement should apply as well to petitions filed by aliens detained pending deportation.[1] *Padilla,* 124 S.Ct. at 2718 n. 8. With the issue now squarely before me, I join the chorus of judges in the Southern and Eastern Districts of New York who have held that the Attorney General is a proper respondent in immigration cases where the petitioner is challenging the government's efforts to remove him from this country.[2]

I reach this conclusion, as did many of my colleagues, because in my view, the near total control exercised by the Attor-

---

1. I note as well that the government's proposed extension of *Padilla* hardly seems faithful to the logic of that decision. The lead opinion in *Padilla* emphasizes that "in habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Padilla,* 124 S.Ct. at 2718. The government's argument here seems to be that the proper respondent is not the Attorney General, but instead *a different* remote supervisory official. Admittedly, the government's approach might be more charitably characterized as asserting that the Field Office Director, unlike the Attorney General, is not remote because he "maintains [the petitioner's] custody by exercising control over the execution of his exclusion order." (Br. for Resp. 6). However, I cannot perceive a meaningful distinction between the degree of control exercised by the brig commander over Padilla, on one hand, and that exercised over Somir by the warden in charge of the New Jersey facility where Somir is now housed on the other. Neither official possesses ultimate authority to decide whether the respective detainee will remain under their supervision, or for how long, and yet Commander Marr was deemed the person with the ability to produce Padilla before a habeas court, and

thus the sole proper respondent in that case. For this reason, if I were to extend *Padilla* to this case, I would find that the proper respondent is the warden of the New Jersey facility where Somir is being held rather than the BICE New York Field Office Director.

2. *See, e.g., Batista–Taveras v. Ashcroft,* No. 03 Civ.1968, 2004 WL 2149095, at *6 (S.D.N.Y. Sept. 23, 2004) (Kaplan, J.) and *Garcia–Rivas v. Ashcroft,* No. 04 Civ. 292, 2004 WL 1534156, at *2 (S.D.N.Y. July 7, 2004) (Buchwald, J.) (concluding, post-*Padilla,* that the Attorney General is a proper respondent in a habeas petition filed by an alien challenging a final deportation order). *See also Walters v. Ashcroft,* 291 F.Supp.2d 237, 243 (Wood, J.) (holding, pre-*Padilla,* that the Attorney General is a proper respondent in such cases); *Small v. Ashcroft,* 209 F.Supp.2d 294, 296 (S.D.N.Y.2002) (Rakoff, J.) (same); *Pena–Rosario v. Reno,* 83 F.Supp.2d 349, 362 (E.D.N.Y.2000) (Gleeson, J.) (same); *Pottinger v. Reno,* 51 F.Supp.2d 349, 357 (E.D.N.Y. 1999) (Weinstein, J.) (same). *But see Belvett v. Ashcroft,* No. 00 Civ. 2463, 2002 WL 287839 (S.D.N.Y., Feb. 27, 2002) (McKenna, J.) (Attorney General is not proper respondent); *GuerreroMusla v. Reno,* No. 98 Civ. 2779, 1998 WL 273038 (S.D.N.Y. May 28, 1998) (Baer, J.) (same).

ney General over aliens facing exclusion and deportation proceedings makes the Attorney General a custodian of these individuals within the meaning of the general habeas statute. *See, e.g., Henderson v. INS,* 157 F.3d 106, 125–26 (2d Cir.1998) (reviewing the many powers granted to the Attorney General with respect to aliens including, but not limited to, the authority to detain and produce aliens, to order aliens deported, to grant or deny discretionary relief from deportation, and to temporarily parole aliens into the country for humanitarian or other reasons); *Garcia–Rivas v. Ashcroft,* No. 04 Civ. 292, 2004 WL 1534156, at *2 n. 5 (S.D.N.Y. July 7, 2004) (noting that the creation of the Department of Homeland Security did not divest the Attorney General of his unique role in immigration affairs, in that the immigration judges and Bureau of Immigration Affairs ("BIA") remain under his authority). Indeed, the Attorney General is designated by statute as the proper respondent in petitions for review brought by aliens challenging their orders of deportation. *See* 8 U.S.C. § 1252(b)(3)(A). Taken together, these factors lead me to conclude that the Attorney General is a proper respondent for petitions filed by aliens who are in detention and are challenging the government's claim that they should be removed from this country. *Compare Deng v. Garcia,* No. 04 Civ.2032, 2005 WL 94643, at *3 (E.D.N.Y., Jan. 15, 2005) (Garaufis, J.) (holding that the immediate custodian rule applies where a habeas petitioner in immigration detention challenges only his present physical detention, rather than the immigration proceedings themselves). *Accord Shehnaz v. Ashcroft,* No. 04 Civ. 2578, 2004 WL 2378371, at *4 (S.D.N.Y. Oct.25, 2004) (Cote, J.).

### III. Habeas Venue

This court's determination, standing alone, that it has jurisdiction over the Attorney General and therefore over this petition, does not mean that the Eastern District of New York is an appropriate forum for Somir's prayer for relief. Venue considerations traditionally have acted alongside jurisdictional barriers to limit the number of courts that may properly entertain a habeas petition. *See Braden v. 30th Judicial Court of Kentucky,* 410 U.S. 484, 493, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Moore v. Olson,* 368 F.3d 757, 759–60 (7th Cir.2004); *Mojica v. Reno,* 970 F.Supp. 130, 165–68 (E.D.N.Y.1997). That limitation appears to have survived *Padilla,* in which a majority of the justices noted that the question of where a habeas petition may be filed is best understood as a one involving both personal jurisdiction and venue. *Id.* at 2727–28 (Kennedy, J. concurring); *id.* at 2734 (Stevens J., dissenting) ("It bears emphasis that the question of a proper forum ... is not one of federal subject-matter jurisdiction ... [r]ather the question is one of venue ..."); *see also Garcia–Rivas,* 2004 WL 1534156, at *4–5 n. 8 (inquiry into proper venue is still required in a noncore habeas proceeding following *Padilla* ).

■ For the purposes of this case, venue is proper in the Eastern District of New York. The three factors considered in determining venue are (1) "where all the material events took place"; (2) where "records and witnesses pertinent to the petitioner's claim are likely to be found"; and (3) the relative convenience of the forum for the parties. *Henderson,* 157 F.3d at 127 n. 25 (quoting *Braden,* 410 U.S. at 493–94, 93 S.Ct. 1123). Applying these factors, it appears that the Eastern District is the proper venue for Somir's action. Somir lived in Queens, New York with his family until he was detained by immigration officials. To the extent that his activities here in the United States between his re-entry in 1999 and his detention in 2004 will be relevant to the

proceedings in this court, those activities were concentrated in this judicial district. In addition, many of Somir's relatives, past and potential future employers, and other affiants who might be called to appear in a hearing to resolve the issues raised in Somir's legal battle against the BICE also live within the Eastern District of New York. The New York City Field Office of the BICE has an area of responsibility that includes metropolitan New York City and Long Island.[3] The government does not claim, nor plausibly could claim, that this courthouse, located two miles from the BICE New York Field Office, and within its area of responsibility, is an inconvenient place for the Field Office Director of this office or for the Department of Justice to litigate this petition.

Moreover, the issues underlying Somir's petition have been briefed to this court, and "the predisposition in this Circuit to reach the merits of a dispute in service to judicial economy compel the assertion of jurisdiction by this Court." *Santos–Gonzalez v. Reno*, 93 F.Supp.2d 286, 292 (E.D.N.Y.2000) (quoting *Eltayeb*, 950 F.Supp. at 99 n. 6). Especially considering that the Southern District would apply the same law to this case, the interests of judicial economy militate in favor of the resolution of Somir's habeas petition before this court. I therefore conclude that venue is proper in this district.

## IV. The July 9 and December 5 Petitions

As noted above, Somir submitted two separate requests for intervention by this court. In the first, dated July 9, 2004, Somir asked this court to enjoin the BICE from enforcing the 1998 exclusion order which at that time was the basis of his detention and the BICE's efforts to remove him from the United States. In the

second, dated December 5, 2004, Somir, noting that the BICE had abandoned its efforts to enforce the 1998 Order, asked this court to prevent the BICE from initiating deportation proceedings against him on *res judicata* grounds. This court is unable to adjudicate either claim on the merits at this time, however. The first petition must be dismissed because Somir did not exhaust the administrative remedies available to him with respect to the 1998 Order. Because of this failing, this court is barred from reviewing the validity of the 1998 Order against Somir or the BICE's decision to enforce that order. The second petition also must be dismissed because the federal courts are not permitted to review a decision to initiate deportation proceedings.

### A. The July 9 Petition

On its face, the July 9 Petition fails to allege that the 1998 exclusion order is invalid or unenforceable in any respect. Rather, the one-page petition simply asserts that because Somir applied for an adjustment of status sometime in 2001, the 1998 Order should be stayed until that application has been decided. However, documents attached to Somir's reply to the government's memorandum in opposition to Somir's petition seem to contest the validity of the exclusion order. Moreover, this court is mindful of its duty to construe liberally the pleadings of petitioners who are not represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). For these reasons, and because this court may not prevent the BICE from enforcing an exclusion order whose validity is undisputed, I have construed the July 9 petition as challenging the validity of the BICE's authority to deport Somir pursuant to the 1998 Order.

---

**3.** *See* http://www.ice.gov/graphics/dro/contact.htm (last visited January 20, 2005). Long

Island is within the territorial jurisdiction of the Eastern District of New York.

■ The government has represented to this court that it now questions the validity of the 1998 Order and therefore will not attempt to enforce that order against Somir. (Enea Letter, November 18, 2004). In any case, Somir's July 9 Petition cannot be considered by this court because Somir failed to challenge the exclusion order before the BIA. The immigration laws in effect on January 2, 1997, the date on which exclusion proceedings against Somir commenced, declared that "[a]n order of deportation or exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." 8 U.S.C. § 1155(a), *repealed by* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, § 306(b), 110 Stat. 3009 (Sept. 30, 1996).[4] Immigration regulations grant aliens the right to appeal to the BIA from the findings of an immigration judge. 8 C.F.R. § 3.1(b)(3). Because Somir did not appeal to the BIA the immigration judge's finding that an exclusion order should issue against him, Somir did not exhaust his administrative remedies, and now may not challenge the validity of the exclusion order in any court. *Mejia–Ruiz v. INS*, 51 F.3d 358, 364 (2d Cir.1995); *Beresford v. INS*, 299 F.Supp.2d 106, 109 (E.D.N.Y. 2004). The July 9 Petition therefore must be dismissed.

**B. The December 5 Petition**

■ This court is also without authority to provide the relief sought by Somir in his December 5 Petition, in which he argues that the BICE should be barred from initiating removal proceedings against him. 8 U.S.C. § 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising

from the decision or action by the Attorney General to commence proceedings ... against any alien." *Johnson v. Ashcroft*, 378 F.3d 164 (2d Cir.2004) is not to the contrary. In that case, the petitioner brought a judicial challenge to the propriety of the BICE's decision to reinstitute removal proceedings against him only *after* the final order of removal had been issued and an appeal had been taken to the BIA. That is the sequence which Somir must follow in his case as well.

Somir's December 5 Petition therefore must be dismissed because it is premature. He may, of course, file another petition stating the reasons that his removal from this country would be unlawful if, following proceedings before the immigration judge and BIA, a final order of removal is issued against him. Until such time, however, this court may not entertain Somir's claims for relief. The Clerk of the Court is directed to close this case.

SO ORDERED.

---

**4.** The former § 1155 continued to govern immigration proceedings such as this, which began prior to April 1, 1997. *See* IIRIRA § 309(c).